UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WAYNE COMBS<br><br>        Plaintiff,<br>    v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>        Defendant. | No. CV 16-02580-AS<br><br>**MEMORANDUM OPINION** |

**PROCEEDINGS**

On December 16, 2016, Plaintiff Anthony Wayne Combs ("Plaintiff") filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income benefits ("SSI") for lack of disability. (Docket Entry No. 1). On May 3,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See Fed. R. Civ. P. 25(d).

1

2017, Defendant filed an Answer to the Complaint along with the Certified Administrative Record ("AR"). (Docket Entry Nos. 21-22). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 13, 27). The parties filed a Joint Stipulation ("Joint Stip.") on August 2, 2017, setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 26).

For the reasons discussed below, the decision of the Administrative Law Judge is AFFIRMED.

**SUMMARY OF ADMINISTRATIVE DECISION**

On September 9, 2013, Plaintiff, formerly employed as a cashier, driller, convenient store porter, and retail store stocker, filed an application for DIB, alleging disability beginning on October 20, 2012. (AR 270, 236). On September 16, 2013, Plaintiff filed an application for SSI, similarly alleging disability beginning on October 20, 2012 due to traumatic brain injury, seizures, and blindness in the right eye. (238-246). On March 13, 2015, Administrative Law Judge ("ALJ") Dante M. Alegre held a hearing at which he heard testimony from Plaintiff and vocational expert ("VE") Ruth Arnush. (AR 48-67). On August 5, 2015, the ALJ denied Plaintiff's application. (AR 33-41).

The ALJ applied the five-step process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 6,

2014 and has not engaged in substantial gainful activity since October 20, 2012, the alleged onset date. (AR 36). At step two, the ALJ found that Plaintiff had the following severe impairments: seizure disorder and right eye blindness (Id.). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 36-37).

The ALJ then found that Plaintiff had the residual functional capacity ("RFC")[2] to perform a full range of work at all exertional levels but with the following non-exertional limitations: "the [plaintiff] should not climb ladders, ropes, or scaffolds; the [plaintiff] should avoid working with moving machinery and unprotected heights; and the [plaintiff] has monocular vision." (AR 37).

In arriving at his conclusion, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (AR 38).

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a commercial cleaner and stock clerk, as this work does not require the performance of work-related

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

activities precluded by Plaintiff's RFC. (AR 39). At step five, the ALJ found that, in the alternative and considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could also perform. (AR 40).

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that: (1) the ALJ failed to develop the record by not obtaining treating or examining source opinion evidence; (2) the ALJ failed to properly consider Plaintiff's

seizure disorder under the Listings; and (3) the ALJ's credibility determination is not supported by substantial evidence. (Joint Stip. at 2).

**DISCUSSION**

After reviewing the record, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[3]

**A. The ALJ Did Not Fail To Fulfill His Duty To Fully And Fairly Develop The Record**

Plaintiff claims that the ALJ failed to fulfill his duty to fully and fairly develop the record. (Joint Stip. at 13). Specifically, Plaintiff argues that the ALJ should have obtained physical and cognitive opinion evidence from an examining or treating source. (Id.). Defendant counters that the record was fully developed and that substantial evidence throughout the record supports the ALJ's RFC finding as well as his finding that Plaintiff's condition could be controlled if he was compliant with his treatment regimen. (Joint Stip. at 16, 18). The Court agrees.

Although Plaintiff bears the burden of proving disability, an ALJ has an affirmative duty to assist the claimant in developing the

---

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

record at every step of the sequential evaluation process. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir.2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir.2005). The ALJ's duty to develop the record is triggered, however, only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir.2001).

Here, the ALJ did not state, and the record does not reflect, that the medical evidence was ambiguous or otherwise inadequate to allow for proper evaluation of the evidence. See AR 36-40. To the contrary, the record included significant medical evidence as well as the opinions of two State agency medical consultants who found Plaintiff was not disabled, explaining that, "[a]lthough you have a history of seizures, you are able to perform work that does not involve a great deal of climbing, balancing or e3xposure to workplace hazards. Although you suffered a brain injury, that condition is not considered severe. Your vision allows you to do normal daily activities. There is no evidence of any other disabling medical conditions." (AR 124, 133, 145, 155). With regard to the consultants' opinions, Plaintiff contends that "there were only non-examining physician opinions in the record, and they occurred prior to seizure frequency in March 2014 . . .[t]here were simply a number of records these doctors did not see . . . failure to get a consultative examination, or failure to recontact any of [Plaintiff's] treating sources, was harmful error." (Joint Stip. at 14). While the non-examining consultant physicians did not have access to medical records dated after their reviews (conducted on November 4, 2013 and January 16, 2014), Plaintiff fails to

articulate what new and impactful information these records provide, how they demonstrate that his condition significantly worsened, or how their inclusion would have impacted the physicians' review. Plaintiff has failed to show that the inclusion of these records would have altered the reviewing physicians' assessment of his medical conditions.

Moreover, as discussed more thoroughly below, the ALJ specifically addressed Plaintiff's claims that his seizures had become more frequent since the non-examining physicians' review, stating "the record documents the [plaintiff's] reports of varying degrees of frequency to his doctors. Additionally … his seizures coincided with lab results indicating low levels of his anti-seizure medications, which is suggestive of noncompliance . . . " (AR 38).

With regard to the other significant medical evidence in the record, Plaintiff contends that the ALJ is unqualified to "play doctor" and "turn the raw medical data into functional terms." (Joint Stip. 21). However, the ALJ did not rely on his own interpretation of "raw data." The ALJ cited to the medical personnel's interpretation of Plaintiff's records in support of his decision. For example, in determining that Plaintiff's seizures coincided with lab results indicating low levels of anti-seizure medications, which is suggestive of non-compliance, the ALJ cited to medical reports stating "most recent dilantin drug level was May 14, 2014 (low) 6.4mcg/ml" and that Plaintiff "developed SZ disorder which seem to be under control when comply with dilantin meds 100 mg po id and most recent level was 6.4mcg/ml". (AR 463, 465).

Thus, the Court finds that the ALJ did not fail to fulfill his duty to fully and fairly develop the record. Contrary to Plaintiff's assertion, the record was fully developed and included substantial evidence to support the ALJ's RFC finding as well as his finding that Plaintiff's condition could be controlled if he was compliant with his treatment regimen.

**B.    The ALJ Properly Considered Plaintiff's Seizure Disorder Under The Listings**

Plaintiff asserts that the ALJ improperly evaluated whether Plaintiff's impairment met or medically equaled the criteria of any medical listing. (Joint Stip. at 22). Specifically, Plaintiff claims that the ALJ offered "no comparison of evidence as to why Plaintiff did not meeting Listing 11.02."[4] (Id.). Defendant

---

[4]    At the time of the ALJ's decision, the Listing of Impairments stated: "In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.
Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy." See https://secure.ssa.gov/poms.nsf/lnx/0434131013.

counters that, because Plaintiff failed to adhere to his prescribed treatment, the ALJ reasonably found that he did not meet all the requirements of Listing 11.02, and was therefore not *per se* disabled. (Joint Stip. at 24). The Court agrees.

A claimant's impairment does not meet the epilepsy listing unless it "persists despite the fact that the individual is following prescribed anticonvulsive treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00A. An ALJ can ordinarily determine whether a claimant is adhering to his or her prescribed therapy from objective clinical findings in the treating physician's report. Id. An ALJ cannot allow a claim under the epilepsy listing without a record of anticonvulsant blood levels. Social Security Ruling 87-6 (1987). The ALJ must evaluate blood drug levels along with all other evidence to determine the extent of the claimant's compliance with treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00A.

Here, the ALJ evaluated Plaintiff's medical record as well as evidence regarding blood drug levels and concluded that they suggested non-compliance. (AR 38). The ALJ stated that Plaintiff's seizures "coincided with lab results indicating low levels of his anti-seizure medications, which is suggestive of noncompliance. . ." (Id.). The ALJ later noted that certain of Plaintiff's alleged seizure episodes "coincided with low levels of the claimant's anti-seizure medications or drug use." (Id.). Indeed, medical records indicate that a level between 10 and 20 is an effective medication level, but that Plaintiff consistently had lower levels in his system. (see e.g., AR 493). In March 2014, Plaintiff suffered a seizure and his Dilantin level was recorded at "0.1." (AR 488, 493).

The medical record indicates that Plaintiff's sister "reports patient not take Dilantin." (AR 488). Again, in May 2014, Plaintiff reported to the Emergency Department following three back to back seizures. Lab results indicated a Dilantin level of 6.3. (AR 472-474).

Thus, because significant evidence indicates that Plaintiff failed to adhere to his prescribed treatment, the ALJ reasonably found that he did not meet all the requirements of Listing 11.02, and was not *per se* disabled.

**C.  The ALJ's Credibility Determination Is Supported By Substantial Evidence**

Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence because Plaintiff's testimony directly comports with the medical evidence of record and no examining or treating physician endorsed Plaintiff's functional limitations or the assertion that Plaintiff underwent "conservative treatment." (Joint Stip. at 30). Defendant counters that there is evidence throughout the record that Plaintiff's physicians measured his anti-seizure medication at sub-therapeutic levels and, thus, the ALJ reasonably found Plaintiff's subjective symptom allegations not fully credible. (Joint Stip. at 31). The Court agrees.

The ALJ rejected Plaintiff's testimony as to the disabling nature of his limitations in part due to his non-compliance with treatment. (AR 38-39). Failure to seek treatment or follow a prescribed course of treatment is a relevant credibility

consideration. Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007); see also id. at 638 ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.").

The ALJ further noted that Plaintiff's treatment was conservative and that he failed to seek more aggressive treatment. (AR 38). Plaintiff claims that the record "overwhelming[ly] indicates financial struggles, to the point where he required referrals from emergency departments after treatments of seizures due to lack of insurance." (Joint Stip. at 30). However, even if financial constraints were an obstacle to treatment, Plaintiff's non-compliance support the ALJ's credibility determination. The record indicates that a social worker stated that she "talked with the patient [] about coverage, but when he leaves the hospital he refuses to answer or return calls," and that "[t]hey have also given him numerous business cards and brochures." (AR 498). A separate medical report indicates that when Plaintiff was asked if he has "attempted to get Medi-Cal or Arrowcare, he responded 'No.'" (AR 505). Thus, it was reasonable for the ALJ to consider Plaintiff's failure to seek treatment, non compliance with prescribed medication, and conservative care when evaluating his credibility.

The Ninth Circuit has made clear that when the evidence is subject to more than one interpretation, the ALJ's interpretation is entitled to deference as long as it is reasonable. See, e.g., Thomas

v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.") On this record, the Court finds the ALJ's interpretation of the evidence to be reasonable. Accordingly, the ALJ's findings are free of legal error and will not be disturbed.

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 29, 2017

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE